1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                           EASTERN DISTRICT OF CALIFORNIA

10

11    DAVID TORREZ,                          Case No. 1:21-cv-00671-CDB (SS)

12                    Plaintiff,
                                             ORDER GRANTING PLAINTIFF'S
13          v.                               MOTION FOR SUMMARY JUDGMENT;
                                             DENYING DEFENDANT'S CROSS-
14    COMMISSIONER OF SOCIAL SECURITY,       MOTION FOR SUMMARY JUDGMENT

15                    Defendant.
                                             (Docs. 24, 26)
16

17

18          Plaintiff David Torrez ("Plaintiff") seeks judicial review of a final decision of the

19   Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for

20   disability benefits under the Social Security Act.  (Doc. 1).  The matter is currently before the

21   Court on the Administrative Record ("AR") and the parties' briefs, which were submitted without

22   oral argument.  (Docs. 24, 26, 27).[1]

23   I.     BACKGROUND

24          A. Administrative Proceedings and ALJ's Decision

25          On June 24, 2015, Plaintiff filed an application for Title XVI Supplemental Security

26   Income ("SSI") and Title II Social Security Disability Insurance ("SSDI") benefits, alleging a

27

28          [1] Both parties have consented to the jurisdiction of a magistrate judge for all proceedings in this
     action, in accordance with 28 U.S.C. § 636(c)(1).  (Doc. 11).

1   period of disability beginning November 3, 2011.  (AR 22; 372-375).  On August 12, 2015, his

2   claim was denied.  (AR 241-244).  It was again denied upon reconsideration on September 10,

3   2015.  (AR 199, 246-250).  On October 15, 2015, Plaintiff requested a hearing before an

4   Administrative Law Judge ("ALJ").  (AR 251-252).  On September 5, 2017, Plaintiff appeared at

5   the hearing before the assigned ALJ, John Trunick.  The ALJ issued an unfavorable decision on

6   February 22, 2018.  (AR 203-221).  Plaintiff timely appealed to the Appeals Council ("AC") and

7   the AC remanded the case for a new decision to be adjudicated from November 3, 2011, the date

8   of onset of Plaintiff's alleged disability.  (AR 222-224).

9       After additional testimony from Plaintiff during a hearing on January 30, 2020, ALJ Shiva

10  Bozarth issued an unfavorable decision on April 15, 2020.  (AR 16-36).  Afterwards, the AC

11  denied review (AR 10-15) and Plaintiff filed the instant action.

12      After reviewing the evidence, the ALJ considered Plaintiff's claims using the five-step

13  sequential evaluation required by 20 CFR § 404.1520(a)(4).  At step one, the ALJ found that

14  Plaintiff had not engaged in substantial gainful activity since the alleged date of disability.  At

15  step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc

16  disease; obesity; diabetes mellitus; diabetic neuropathy; depression; and anxiety.  He also

17  determined that Plaintiff had further functional difficulties resulting from hypertension.  He found

18  no evidence in the file that hypertension caused more than minimal functional limitations and

19  was, therefore, non-severe, stating that Plaintiff takes medication for the condition which is

20  effective, providing the example that an examination of the cardiovascular system was generally

21  unremarkable.  The ALJ stated that he considered all of Plaintiff's medically determinable

22  impairments when assessing his residual functional capacity ("RFC").  (AR 22).

23      At step three, the ALJ determined that none of the impairments, nor a combination of any

24  of them, is of a severity to meet or medically equal the criteria of an impairment listing in CFR

25  Part 303, Subpart P, Appendix 1.  *Id.*  The ALJ then provides that he utilized the "paragraph B"

26  criteria[2] in determining that Plaintiff's mental impairments did not, singly or in combination, meet

27

28      [2] The "paragraph B criteria" evaluates mental impairments in the context of four broad areas of
    functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3)
    concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. § Pt. 404,

or medically equal the criteria of listings 12.04 and 12.06.  The ALJ found that Plaintiff has no

limitation in his ability to understand, remember, or apply information, a "moderate" limitation in

the ability to interact with others, no limitation in the ability to concentrate, persist, or maintain

pace, and a "moderate" limitation in the ability to adapt or manage himself.  He stated that these

findings are consistent with medical and other evidence, providing the example that treatment

reports showed Plaintiff was "alert and cooperative with a normal mood and affect and a normal

attention span and concentration," with citation to exhibits B1F and B16F.  (AR 23).

He stated the findings were consistent with an additional report which "which showed that

when complaint [sic] with medication, he is stable and feels good," with citation to exhibit B19F.

He further provided that the findings are consistent with Plaintiff's report that he does "not need

help with bathing, dressing, and grooming and he has adequate motivation for them," with

citation to exhibit B13F.  Finally, he noted that the "moderate" limitation in the ability to interact

with others is consistent with Plaintiff's anxiety, and the "moderate" limitation the ability to adapt

or manage himself is consistent with Plaintiff's "social anxiety, hypervigilance, and un-cued

panic attacks," with citation to exhibit B13F.  He concludes that, as the mental impairments do

not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B"

criteria are not satisfied.  (AR 23).

The ALJ then considered the "paragraph C" criteria.  "Paragraph C," subsection (1)

requires a "highly structured setting that is ongoing that diminishes the signs and symptoms of

[Plaintiff's] mental disorder."  20 C.F.R. Pt. 404, subpt. P, app. 1 § 12.04(C)(1).  The ALJ found

that "paragraph C" criteria were not satisfied, as there is no evidence Plaintiff relies upon ongoing

"medical treatment, mental health therapy, psychosocial support, or a highly structured setting to

---

Subpt. P, App. 1.  The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme."  *Id.*  To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning.  *Id.*  An "extreme" limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.  *Id.*  A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.  *Id.*  A "moderate" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "fair."  *Id.*  And a "mild" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "slightly limited."  *Id.*  *See Carlos v. Comm'r of Soc. Sec.*, 1:21-cv-00517-SAB, 2023 WL 1868870, at *4 n.7 (E.D. Cal. Feb. 9, 2023).

1    diminish the symptoms and signs of his mental disorder." The ALJ cites to exhibit B12F to

2    support his findings that Plaintiff "cooks, cleans, shops, and performs his own activities of daily

3    living without assistance." (AR 23).

4        The ALJ then, prior to proceeding to step four, determined the residual functional capacity

5    ("RFC") for Plaintiff. He found Plaintiff had the capacity to perform work at the "medium

6    exertional level." He stated as follows:

7        Specifically, he is able to lift and carry 50 pounds occasionally and 25 pounds
        frequently, stand and walk about six hours, and sit for about six hours total in an
8        eight-hour workday. He is able to frequently balance, stoop, kneel, crouch, crawl,
        and climb ramps or stairs, but he should never climb ladders or scaffolds. The
9        claimant should never work at unprotected heights or around fast moving
10       machinery and he is limited to frequently reaching overhead with the bilateral upper
        extremities. He is also limited to frequently operating foot controls. In addition, the
11       claimant is limited to only routine work related decision making with occasional
        contact with coworkers and the public.
12

13   AR (24). The ALJ noted that he considered all symptoms and "the extent to which these

14   symptoms can reasonably be accepted as consistent with the objective medical evidence and other

15   evidence," based on 20 CFR 404.1529 and 416.929, as well as SSR 16-3p. The ALJ explained

16   that he followed the "two-step process" where first he must determine whether there is an

17   underlying medically determinable physical or mental impairment or impairments that could

18   reasonably be expected to produce Plaintiff's pain or other symptoms and, if so determined, then

19   he must evaluate the intensity, persistence, and limiting effect of Plaintiff's symptoms. (AR 24).

20       The ALJ then discussed his findings regarding Plaintiff's physical and mental

21   impairments. (AR 24-28). He found that Plaintiff had a body mass index ("BMI") over 30 and

22   had been assessed as obese. He noted Plaintiff was also diagnosed with type 2 diabetes mellitus

23   with diabetic peripheral neuropathy, as a report showed diminished sensation to light touch in

24   both hands and feet and took gabapentin for pain. He stated that Plaintiff had no musculoskeletal

25   symptoms and no focal deficits with normal sensation, reflexes, coordination, muscle strength,

26   and tone, with "no evidence of compression neuropathy, polyneuropathy, or ongoing lumbar

27   radiculopathy." For these findings, the ALJ cited to exhibits B1F, B2F, B3F, B7F, B14E, B14F,

28   B17F, B18F, and B25E. (AR 25).

1    The ALJ noted that examinations of Plaintiff's extremities did not reveal any "clubbing,

2    cyanosis, edema, or deformity with a full range of motion of all joints" as well as "normal

3    coordination, balance, and gait."  The ALJ discussed the medical evidence regarding Plaintiff's

4    gait, noting a normal gait, followed by an "unsteady gait" but with full strength in the "bilateral

5    upper and lower extremities," followed by a normal gait, and finally, a "non-antalgic gait with no

6    assistive device" without "deformity or swelling in the extremities with a normal range of

7    motion."  The ALJ cited to exhibits B1F, B2F, B7F, B14F, B15F, B16F, and B20F.  (AR 25).

8    The ALJ then considered the medical opinion evidence, namely exhibits B12F (the

9    consultative evaluation of physician Robert Wagner), B9F (the state-agency medical consult of

10    physician I. Ocrant), and B6A (the state-agency medical consult of physician A. Nasrabadi).  The

11    ALJ gave Dr. Wagner's proscribed limitations significant weight because the opinion was

12    generally consistent and supported by medical and other evidence in the record.  The ALJ stated

13    Dr. Wagner's limitations was consistent with Plaintiff's report describing his pain as zero out of

14    ten and with a normal balance, gait, and coordination.  The ALJ found the limitations were

15    consistent with Dr. Wagner's examination findings, as well.  (AR 25).

16    The ALJ gave little weight to Drs. Ocrant and Nasrabadi's findings, both of whom stated

17    there was insufficient evidence to make a determination as to Plaintiff's RFC.  The ALJ reasoned

18    that evidence from the hearing, and the findings of Dr. Wagner, are sufficient to make such a

19    determination.  (AR 26).

20    Following his discussion regarding Plaintiff's physical impairments, the ALJ turned to

21    Plaintiff's mental impairments.  He noted that Plaintiff reported feelings of sadness and

22    anxiousness and was diagnosed with depression and anxiety.  He stated Plaintiff took medication

23    for those conditions, namely Wellbutrin (bupropion) and propranolol which "are effective, as a

24    report indicated [Plaintiff's] condition is stable with medication."  He found that the records

25    showed Plaintiff has been "alert and cooperative with a normal mood and affect and a normal

26    attention span and concentration," as well as with an "age appropriate" mental status.  The ALJ

27    stated that Plaintiff presented with "adequate concentration, persistence, and pace with

28    appropriate thought content and an intact memory" as well as that, when Plaintiff was compliant

with medication, he "reported feeling good."  The ALJ cited to exhibits B1F, B3F, B4F, B13F, B14E, B16F, B19F, and B20F.  (AR 26).

The ALJ then considered the medical opinion evidence, namely exhibits B13F (the consultative mental evaluation of psychologist Lance A. Portnoff), B4A (the state-agency medical consult of psychologist Cory A. Brown), B10F (the state-agency medical consult of physician A. Garcia), and B6A (the state-agency medical consult of physician G. Ikawa).  (AR 26-27).

The ALJ gave significant weight to Dr. Portnoff's proscribed limitations, namely that Plaintiff is able to "perform simple and repetitive tasks," "has no limitation in his ability to perform detailed and complex ones," "has mild to moderate limitations in his ability to interact with coworkers and the public," "has no limitations in his ability to accept instructions from supervisors," and has "no limitations in his ability to work on a consistent basis without special or additional instruction."  Dr. Portnoff also determined that Plaintiff has "moderate limitations in his ability to complete a normal workday or workweek  without interruptions from psychiatric condition" but that he has "no limitations" in regards to regular attendance in the workplace. Finally, Dr. Portnoff found Plaintiff "moderately impaired" as to being able to deal with stress encountered in a "competitive work environment."  (AR 26).

The ALJ found Dr. Portnoff's limitations to be consistent and supported by the record, namely "in light of treatment reports showing [Plaintiff] was alert and cooperative with a normal mood and affect and a normal attention span and concentration," as well as with a February 2020 report showing that, when Plaintiff is compliant with medication, he "is stable and feels good." The ALJ cites to exhibits B1F, B13F, B16F, and B19F.  (AR 26).

The ALJ gave "limited weight" to the opinion of Dr. Brown, who found Plaintiff is "capable of performing simple instructions" and could "sustain a work schedule with simple tasks," and could "deal with supervisors and minimal coworkers, and minimal public contact." The ALJ stated that Dr. Brown's opinion is inconsistent with the treatment reports, as described supporting the findings of Dr. Portnoff, and is "over restrictive," particularly in light of the February 2020 report.  The ALJ cites to exhibits B1F, B4A, B16F, and B19F.  (AR 27).

Both Drs. Garcia and Ikawa found insufficient evidence to make a determination

regarding Plaintiff's mental RFC.  The ALJ gave "little weight" to both findings, stating that the evidence received during the hearing as well as the report of Dr. Portnoff are sufficient to make a determination regarding Plaintiff's mental RFC.  The ALJ cites to exhibits B6A, B9F, B10F, and B13F.  (AR 27).

The ALJ addressed the third-party function report of Angela Russell, Plaintiff's girlfriend. She stated that Plaintiff's ability to bend is "affected," as his ability to concentrate.  The ALJ pointed to Dr. Wagner's report for the proposition that Plaintiff is "easily able to bend at the waist" and to Dr. Portnoff's report for the proposition that Plaintiff demonstrated "adequate concentration, persistence, and pace."  The ALJ gave Ms. Russell's function report "little weight" because it is evidence from a non-medical source and contains inconsistent and unsupported statements.  The ALJ cites to exhibits B4E, B12F, and B13F.  (AR 27).

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but his statements concerning the intensity, persistence, and limiting effects of those symptoms are not entirely consistent with the medical and other evidence.  The ALJ specifically noted the findings of Dr. Wagner as to Plaintiff's ability to bend at the waist and Dr. Portnoff regarding concentration, as well as Plaintiff's own claims regarding his ability to complete tasks.  The ALJ cites to exhibits B2E, B3E, B7E, B12F, B13F, and B20E.  (AR 27-28).

Moving to step four, the ALJ found that Plaintiff had no past relevant work.  At step five, the ALJ found that, based on the testimony of the vocational expert, Plaintiff is capable of making a successful adjustment other work that exists in significant numbers in the national economy.  He cited packer for agricultural produce, food service worker in a hospital environment, and kitchen helper as representative occupations.  He concluded by determining that Plaintiff had not been under a disability from November 3, 2011, to the date of the decision.  (AR 28-29).

### B.  Medical Record and Hearing Testimony

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

///

1    **II.    STANDARD OF REVIEW**

2    A district court's review of a final decision of the Commissioner of Social Security is

3    governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the

4    Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or

5    is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial

6    evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

7    conclusion."  (*Id*. at 1159) (quotation and citation omitted).  Stated differently, substantial

8    evidence equates to "more than a mere scintilla[,] but less than a preponderance."  (*Id*.) (quotation

9    and citation omitted).  "It is such relevant evidence as a reasonable mind might accept as adequate

10    to support a conclusion."  *Healy v. Astrue*, 379 Fed. Appx. 643, 645 (9th Cir. 2010).  In

11    determining whether the standard has been satisfied, a reviewing court must consider the entire

12    record as a whole rather than searching for supporting evidence in isolation.  (*Id.*).

13    The court will review only the reasons provided by the ALJ in the disability determination

14    and may not affirm the ALJ on a ground upon which she did not rely.  Social Security Act § 205,

15    42 U.S.C. § 405(g).  In reviewing a denial of benefits, a district court may not substitute its

16    judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the

17    evidence is susceptible to more than one rational interpretation."  *Tommasetti v. Astrue*, 533 F.3d

18    1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account

19    of an error that is harmless.  (*Id.*).  An error is harmless where it is "inconsequential to the

20    [ALJ's] ultimate nondisability determination."  (*Id*). (quotation and citation omitted).  The party

21    appealing the ALJ's decision generally bears the burden of establishing that it was harmed.

22    *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

23    A claimant must satisfy two conditions to be considered "disabled" and eligible for

24    benefits within the meaning of the Social Security Act.  First, the claimant must be "unable to

25    engage in any substantial gainful activity by reason of any medically determinable physical or

26    mental impairment which can be expected to result in death or which has lasted or can be

27    expected to last for a continuous period of not less than twelve months."  42 U.S.C. §

28    1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only

unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. (*Id.*).

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant

9

1    work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant

2    work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If

3    the claimant is incapable of performing such work, the analysis proceeds to step five.

4        At step five, the Commissioner considers whether, in view of the claimant's RFC, the

5    claimant is capable of performing other work in the national economy.  20 C.F.R. §

6    416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational

7    factors such as the claimant's age, education, and past work experience.  (*Id.*).  If the claimant is

8    capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.

9    20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis

10   concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  (*Id.*).

11       The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*,

12   180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the

13   Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

14   work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran*

15   *v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

16   **III.    ISSUES AND ANALYSIS**

17       Plaintiff raises two issues in his motion for summary judgment: (1) the ALJ harmfully

18   erred by failing to provide clear and convincing reasons to reject the psychological and physical

19   symptomology evidence of record; and (2) the mental RFC is not supported by substantial

20   evidence.  (Doc. 24 at 2).

21       **A.  Whether the ALJ Failed to Provide Clear and Convincing Reasons for**

22            **Discounting Plaintiff's Allegations Regarding Psychological and Physical**

23            **Symptomology**

24       Plaintiff asserts that the ALJ committed harmful error by failing to discuss his hearing

25   testimony regarding his psychiatric symptoms, specifically as to his severe anxiety, panic

26   disorder, and resulting shortness of breath and corresponding non-conservative treatment and

27   medications.  (Doc. 24 at 11-12).  He states that the ALJ only made "one mention to

28   psychological objective evidence of record in order to discount" his testimony on his ability to

10

1  concentrate and complete tasks, and the ALJ mischaracterized the report by failing to address its

2  findings as a whole.  *Id.* at 13.  He argues that the issue is not whether he could complete tasks on

3  a "good day," but rather his ability to focus, concentrate, and "simply function" in a normal work

4  environment on a sustained basis.  *Id.* at 14.  He further argues that the ALJ's references to Dr.

5  Wagner's findings of an ability to bend are not clear and convincing reasons to reject Plaintiff's

6  physical symptom evidence.  He notes the ALJ's "failure to discuss" his "extensive testimony"

7  regarding severe diabetic neuropathy and resulting limitations on his daily activities.  *Id.* at 16-17.

8  Finally, he argues that the ALJ failed to address how an individual with his limitations, as

9  testified to, could sustain "medium" work in a normal work environment, particularly as the

10  record evidences only a one-time ability to "bend" and one-time ability to "concentrate."  *Id.* at

11  18.

12      Defendant asserts that the ALJ provided multiple reasons for discounting Plaintiff's

13  symptom testimony, such as "unremarkable clinical signs upon examination," "inconsistent

14  statements" as in his adult function report, daily activities that showed he could care for his own

15  needs independently, positive response to medication when compliant, and opinions of record

16  stating he could perform a wide array of mental and physical work.  (Doc. 26 at 13-14).

17  Defendant states the ALJ did address Plaintiff's psychiatric symptomology by incorporating it

18  into the RFC.  *Id.* at 14-15.  Defendant provides that the "record contained ample support for the

19  ALJ's reasonable conclusions," discussing first Plaintiff's physical conditions.  *Id.* at 15-18.

20  Defendant addressed the ALJ's findings concerning Plaintiff's mental conditions, stating that just

21  as with Plaintiff's physical allegations, he cites to "relatively few, isolated incidents" without

22  distinguishing between his subjective complaints and the objective clinical signs.  Defendant

23  provides that Plaintiff's examinations were unremarkable while he was compliant with his

24  medication, and includes a footnote citing record evidence that discusses Plaintiff's

25  noncompliance.  *Id.* at 18-19.  Defendant argues that Plaintiff's "citation to isolated incidents"

26  cannot meet his burden in light of documentation of consistent "normal physical and mental

27  clinical findings."  *Id.* at 19.

28      An ALJ's reasons for rejecting a claimant's subjective symptom statements must be

specific, clear, and convincing.  General findings regarding a claimant's credibility are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.  The ALJ's findings must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.  A reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain.  As such, an implicit finding that a plaintiff's testimony is not credible is insufficient.  *Christine G. v. Saul*, 402 F. Supp. 3d 913, 921-22 (C.D. Cal. 2019) (citations and quotations omitted).  The standard is "not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases."  *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).

### 1. Psychological Symptomology

First, the Court will turn to the psychological symptomology at issue.  During the hearing, Plaintiff testified regarding his psychological symptoms.  Plaintiff stated he has panic attacks "quite frequently … at least once a month … if not more." (AR 101).  He stated that they can last for "up to six days," and had previously made him "[feel] like he was going to die." (AR 102).  He stated he takes bupropion daily.  He mentions he was prescribed lorazepam but does not take it daily, as it is a narcotic and he does not "want to get hooked up on that." (AR 102).  He stated he gets "confused, forgetful, and once I start panicking, I lose control.  I'm no longer in control of myself."  He provided that this has been occurring for years. (AR 103).  He stated anxiety attacks occur at random and he will "wake up in a panic, like [he] was being buried alive" and that he cannot breathe and gets "so tense that [he] just [wants] to scream."  He stated it can occur in public due to crowds and noise. (AR 104).  He provided that, always during the beginning of an attack, he will "start throwing things, hitting walls" and that he cannot control himself. (AR 105).

Regarding concentration issues, Plaintiff stated that he can concentrate for "30 minutes at most" before his mind starts wandering and, on worse days, he cannot sit still.  He testified that he sometimes has to lie down and rest during daytime hours, as he has trouble sleeping.  He provided that if he added all the time up in a day where he had to lie down due to "pain, fatigue, or other

1    mental health issues," the total would be "[p]robably at least four hours, five hours."  AR 108-

2    109).

3           An ALJ's failure to properly consider Plaintiff's subjective symptom testimony may

4    independently be reversible error.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir.

5    2015) (finding that an ALJ's failure to identify and explain why a claimant's subjective testimony

6    is not credible constitutes reversible error because the reviewing court cannot determine if the

7    ALJ's decision was supported by substantial evidence).  Before the ALJ discredits a claimant's

8    subjective symptom testimony, they must first determine if objective medical evidence of an

9    underlying impairment "could reasonably be expected to produce the pain or other symptoms

10   alleged."  *Trevizo*, 871 F.3d at 678.  The ALJ found this was the case.  (AR 27).  The second step

11   is for the ALJ to describe specific, clear, and convincing reasons to reject the claimant's

12   testimony on the severity of his symptoms.  *Trevizo*, 871 F.3d at 678.

13          Indeed, accounts of Plaintiff's psychological conditions, and corresponding prescribed

14   medications, exist throughout the record.  (AR 562, 567, 569, 638, 640-644, 652-653, 656-658,

15   683-684, 690-691, 725, 737-738, 740, 751, 776, 779, 816, 850, 885, 901, 926, 930, 970, 972, 998,

16   1003, 1074).  That, along with his testimony during the hearing regarding his symptoms (AR 101-

17   109), establishes for the ALJ a duty to discuss Plaintiff's impairments and resulting subjective

18   symptom testimony and, if the ALJ finds such testimony should be rejected, the ALJ must

19   describe his reasons with specificity under the relevant clear and convincing standard.  *See*

20   *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir.2006) ("[U]nless an ALJ makes a finding

21   of malingering based on affirmative evidence thereof, he or she may only find an applicant not

22   credible by making specific findings as to credibility and stating clear and convincing reasons for

23   each.")

24         While the Court may be able to draw inferences about what testimony may be

25   inconsistent, the ALJ must identify those inconsistencies with specificity.  *Lambert v. Saul*, 980

26   F.3d 1266, 1278 (9th Cir. 2020) (citing *Brown-Hunter*, 806 F.3d at 494) ("Although the

27   inconsistencies identified by the district court could be reasonable inferences drawn from the

28   ALJ's summary of the evidence, the credibility determination is exclusively the ALJ's to make,"

13

1    and the reviewing court is "constrained to review the reasons the ALJ asserts.").

2        Plaintiff argues that "there is no discussion or even a basic summary of [Plaintiff's]

3    hearing testimony regarding his psychiatric symptomology testimony at issue" except for

4    citations to a function report and a general citation to the hearing testimony regarding his "ability

5    to concentrate" and "ability to complete tasks" being "affected." (Doc. 24 at 11, citing AR 27-

6    28).

7        As to this, Plaintiff is correct. The ALJ did not make any specific findings as to the

8    credibility of Plaintiff's symptom testimony and its severity. Defendant argues that the ALJ did

9    in fact consider Plaintiff's symptom testimony by incorporating it into the "paragraph B" mental

10   limitations analysis. (Doc. 26 at 14-15). Defendant cites to case law for the proposition that the

11   ALJ need only discuss and evaluate evidence to support his conclusion, not do so under a specific

12   heading, and that the ALJ need not discuss every piece of evidence. These arguments are

13   unpersuasive. As noted above, the ALJ was required to reject Plaintiff's symptom testimony with

14   clear and convincing reasons. The ALJ did not make any mention of Plaintiff's testimony

15   regarding potentially random, multi-day panic attacks and resulting panic and loss of control, his

16   trouble sleeping, his inability to sit still at times, and his need to lie down at other times. It

17   follows that, having not even mentioned this testimony, the ALJ did not meet the applicable

18   standard when rejecting this testimony. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)

19   ("The ALJ must state specifically which symptom testimony is not credible and what facts in the

20   record lead to that conclusion.").

21       Further, the reasons proffered by the ALJ are themselves insufficient. It appears the

22   primary reasons the ALJ offers to rebut Plaintiff's credibility and reject his testimony are that (1)

23   one medical record from February 19, 2020, indicated his condition was stable with medication

24   (AR 26, citing AR 1019), (2) a March 2015 medical record showed Plaintiff was alert and

25   cooperative, with normal mood and affect (AR 26, citing AR 561), (3) an October 17, 2019,

26   medical record showed Plaintiff was awake, alert and cooperative, with normal mood and affect

27   and age appropriate mental status (AR 26, citing AR 859), (4) a November 15, 2019, medical

28   record showed Plaintiff had adequate concentration, persistence, pace, thought content, and

1    memory (AR 26, citing AR 739), and (5) a function report completed by Plaintiff evidenced

2    activities of daily living (AR 429-437).

3    The ALJ cites only a few examples of instances of improvement or stability, over a period

4    of years of treatment, to reject claimant's symptomology. *Garrison v. Colvin*, 759 F.3d 995, 1017

5    (9th Cir. 2014) ("As we have emphasized while discussing mental health issues, it is error to

6    reject a claimant's testimony merely because symptoms wax and wane in the course of treatment.

7    Cycles of improvement and debilitating symptoms are a common occurrence, and in such

8    circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a

9    period of months or years and to treat them as a basis for concluding a claimant is capable of

10   working.").

11   Defendant argues that Plaintiff cites to only "relatively, few isolated incidents of positive

12   mental clinical signs documented over the eight-and-a-half-year period" in support of his mental

13   symptom allegations, without distinguishing between his subjective complaints and the

14   documented objective clinical signs.  However, on this point, the ALJ's analysis is insufficiently

15   specific to satisfy the relevant clear and convincing standard.  *See Wheeler v. Berryhill*, No. 3:16-

16   CV-01623-AA, 2017 WL 3478483, at *4 (D. Or. Aug. 11, 2017) ("it is not possible to evaluate

17   whether [merely conservative] treatments conflict with plaintiff's allegations about the severity of

18   his symptoms because the ALJ never specified which symptom statements conflict with

19   plaintiff's course of treatment.").  The ALJ never discussed whether the Plaintiff's course of

20   treatment was "conservative" or otherwise evidenced any patterns of clinical signs.  As such, the

21   record is undeveloped as to these arguments.  A court can "review only the reasons provided by

22   the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he

23   did not rely." *Garrison*, 759 F.3d at 1010.[3]

24   Defendant argues that Plaintiff's examinations were unremarkable while he was compliant

25

26   [3] Following *Garrison*, the Court declines to consider Defendant's post hoc rationalization of the
     ALJ's rejection of Plaintiff's symptomology testimony (Doc. 26 at 20-21) because the argument is based
27   on purported inconsistencies that the ALJ did not rely upon.  *Accord Bray v. Comm'r of Soc. Sec. Admin.*,
     554 F.3d 1219, 1225-26 (9th Cir. 2009) (courts must "review the ALJ's decision based on the reasoning
28   and factual findings offered by the ALJ – not post hoc rationalizations that attempt to intuit what the
     adjudicator may have been thinking.").

1    with his medication, and, in a footnote, cites record evidence that discusses Plaintiff's

2    noncompliance.  (Doc. 26 at 18-19).  As noted above, here again the ALJ did not elaborate as

3    such in her decision and thus the record is undeveloped as to these arguments.  *Garrison*, *supra*,

4    759 F.3d at 1010.  However, even assuming *arguendo* the ALJ had made such findings, the

5    record seems to evidence possible relevant mitigating factors.  For example, the February 19,

6    2020, medical record evidences a follow-up clinical visit by Plaintiff to Sequoia Health and

7    Wellness Centers in Visalia, California.  The physicians note that Plaintiff had gone to the

8    emergency room multiple times over the preceding months for increased anxiety, after his

9    Wellbutrin prescription dosage increased on November 15, 2019, from 300 to 450 milligrams.

10   Plaintiff reported that he then had difficulties "with insurance getting approval of the dosage" and

11   so he was not taking the medication consistently or at all for a "couple of weeks towards the end

12   of January."  (AR 1019).  Similarly, during the hearing, Plaintiff mentions not taking lorazepam

13   as it is a narcotic and he worried about possible addiction.  (AR 102).

14          Although an "unexplained or inadequately explained failure" to seek treatment or follow

15   prescribed treatment can be a valid reason to discount a claimant's testimony, the ALJ is required

16   to consider plaintiff's reasons for not taking medications.  *Trevizo*, 871 F.3d at 679-80; *see Stuter*

17   *v. Astrue,* No. CIV S-08-0129 DAD, 2009 WL 2824740, at *5 (E.D. Cal. Sept. 1, 2009) ("Where

18   a claimant provides evidence of a good reason for not taking medication for her symptoms, her

19   symptom testimony cannot be rejected for not doing so.").  The ALJ did not consider the

20   Plaintiff's asserted reasons for not taking medications.

21          In sum, the ALJ did not meet the relevant clear and convincing standard in rejecting

22   Plaintiff's psychological symptomology where the record shows consistent diagnosis of

23   depression and anxiety, with multiple medications prescribed, over the course of many years and

24   the ALJ failed to appropriately discuss Plaintiff's testimony.  *See Garrison*, 759 F.3d at 1018

25   ("Rather than describe Garrison's symptoms, course of treatment, and bouts of remission, and

26   thereby chart a course of improvement, the ALJ improperly singled out a few periods of

27   temporary well-being from a sustained period of impairment and relied on those instances to

28   discredit Garrison.  While ALJs obviously must rely on examples to show why they do not

1  believe that a claimant is credible, the data points they choose must in fact constitute examples of

2  a broader development to satisfy the applicable 'clear and convincing' standard.").

3  **2.  Physical Symptomology**

4  Turning to the physical symptomology at issue, Plaintiff testified that he can stand for

5  "[a]pproximately 15, 20 minutes" at a time before he starts feeling lower back pain which then

6  continues down his legs to his feet.  (AR 105-106).  He testified that he can walk approximately

7  four blocks before he needs to stop and take a break.  (AR 106).  He can tolerate sitting down for

8  20 minutes before he has to stand.  (AR 106-107).  He testified his back pain is there "all the

9  time" from 2017 onwards, at a severity of "about a six" on a scale of one to ten.  He stated lifting

10  his legs and walking on uneven road, such as "stepping up and down on sidewalks," aggravated

11  the pain.  (AR 108).

12  After discussing Plaintiff's physical impairments as evidenced in the record, the ALJ

13  found that Plaintiff's "medically determinable impairments could reasonably be expected to cause

14  the alleged symptoms."  (AR 27).  As noted in section one above, that, along with his testimony

15  during the hearing regarding his symptoms (AR 101-109), establishes for the ALJ a duty to

16  discuss Plaintiff's impairments and resulting subjective symptom testimony and, if the ALJ finds

17  such testimony should be rejected, the ALJ must describe his reasons with specificity under the

18  relevant clear and convincing standard.  *See Robbins*, *supra*, 466 F.3d at 883.

19  Plaintiff argues that the ALJ failed to discuss physical symptomology testimony offered

20  during the hearing and, further, failed to discuss the documented evidence of record supporting

21  his testimony regarding his "less than sedentary physical limitations caused by his neuropathy."

22  (Doc. 24 at 16-17).  Plaintiff argues that "the ALJ's one reference to [his] ability to bend down

23  and take off his shoes during a one-time consultative examination" fails to meet the clear and

24  convincing standard.  *Id.* at 17.

25  The Court agrees with Plaintiff.  In his decision, the ALJ did not make any specific

26  findings as to the credibility of Plaintiff's symptom testimony and its severity.  Defendant argues

27  that "the record contained ample support for the ALJ's reasonable conclusions."  (Doc. 26 at 17).

28  Defendant provides that "[h]ere, where the ALJ's factual findings are supported by substantial

1    evidence and free of legal error, the Court should affirm." *Id.* at 19.

2        These arguments are unpersuasive.  As noted above, the ALJ was required to reject

3    Plaintiff's symptom testimony with clear and convincing reasons.  The ALJ did not make any

4    mention of Plaintiff's physical symptomology, except for his ability to bend.  It follows that,

5    having not even mentioned the hearing testimony or other sources of symptomology, the ALJ did

6    not meet the applicable standard when rejecting this testimony.  *See Smolen*, *supra*, 80 F.3d at

7    1284.

8                          **3.  Daily Activities**

9        The ALJ was permitted to consider daily living activities in his credibility analysis.  The

10   Ninth Circuit has explained that "if a claimant engages in numerous daily activities involving

11   skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations

12   upon making specific findings relating to those activities." *Burch v. Barnhart*, 400 F.3d 676, 681

13   (9th Cir. 2005); *see Morgan v. Apfel*, 169 F.3d 595, 600 (9th Cir. 1999) (finding that claimant's

14   ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child was

15   evidence of claimant's ability to work).  Daily activities may be grounds for an adverse credibility

16   finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving

17   capacities that are transferable to a work setting.  *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir.

18   2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).  When discounting a claimant's

19   daily activities, an ALJ must explain "*which* daily activities conflicted with *which* part of

20   [c]laimant's testimony." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (emphasis in

21   original).

22       Though inconsistent daily activities may provide a justification for rejecting symptom

23   testimony, "the mere fact that a plaintiff has carried on certain daily activities ... does not in any

24   way detract from her credibility as to her overall disability." *Benecke v. Barnhart*, 379 F.3d 587,

25   594 (9th Cir. 2004) (alteration in original) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th

26   Cir. 2001)).  A claimant "does not need to be 'utterly incapacitated' in order to be disabled." *Id.*

27   (quoting *Vertigan*, 260 F.3d at 1050).

28       Plaintiff argues that the "record does not indicate that Plaintiff could—or did—perform

1    any of the activities identified for a substantial part of each day.  Thus, the activities identified by

2    the ALJ do not support the adverse credibility decision [referring to a 'one time ability to bend'

3    and 'one time ability to adequately concentrate']."  Plaintiff cites case law for the proposition that

4    home activities are not easily transferable to the workplace environment.  (Doc. 24 at 18).

5         Defendant argues that the ALJ noted Plaintiff does not need assistance bathing, dressing,

6    and grooming, and has adequate motivation to complete these tasks.  Defendant cites case law for

7    the proposition that everyday activities, even if they suggest some difficulty functioning, may be

8    grounds for discrediting Plaintiff's testimony to the extent they contradict claims of a totally

9    debilitating impairment.  Defendant also cites to the record for additional activities Plaintiff had

10    completed at times, noting the ALJ did not mention them and citing case law for the proposition

11    that, even if the Court may not affirm the ALJ's decision on grounds not set forth within it, the

12    Court may consider such evidence if it was available to the ALJ and supports the ALJ's stated

13    grounds for the decision.  (Doc. 26 at 21-22).

14         The ALJ discusses Plaintiff's activities of daily living in two instances: when discussing

15    the "paragraph B" and "paragraph C" criteria relating to Plaintiff's mental impairments (AR 23)

16    and when referencing a function report regarding his ability to bend and to complete tasks (AR

17    27).  He cites to a consultative exam by physician Roger Wagner and a mental evaluation by

18    psychologist Lance A. Portnoff for the conclusion that Plaintiff can engage in activities of daily

19    living, namely "bathing, dressing, and grooming" with "adequate motivation" and shopping,

20    cooking, cleaning, and performing "activities of daily living without assistance."  (AR 23, citing

21    AR 725, 739).  However, on the same page and in the same section as that cited by the ALJ, the

22    mental evaluation of Dr. Portnoff also includes the statement "He cannot travel alone and cannot

23    manage money … He describes a typical day as mainly staying at home.  He naps much of the

24    time due to Seroquel-related fatigue and drowsiness."  (AR 739).  The ALJ did not mention or

25    discuss this in his decision.

26         As to Plaintiff's function report, the ALJ notes that Plaintiff states his ability to complete

27    tasks is affected (citing AR 434) but "that is internally inconsistent with his subsequent report that

28    he finishes what he starts" (citing AR 434).  (AR 27).  However, this appears to be a misstatement

1   of the record.  Plaintiff does check the box for "Yes" next to the question "Do you finish what

2   you start? (For example: a conversation, chores, reading, watching a movie)."  Importantly,

3   however, immediately beside the question he writes "Sometimes."  (AR 434).  The ALJ did not

4   mention or discuss this clarification in his decision.  Additionally, Plaintiff also outlined other

5   symptom testimony in the function report that the ALJ did not clearly address, for example

6   dizziness, hand cramps, "blurred vision," forgetfulness, blood pressure spikes due to stress,

7   changes in routine causing confusion and panic attacks, among others.  *See* (AR 429-437).

8   Plaintiff mentions being able to "walk for 15-20 minutes" before needing to rest (AR 434), which

9   appears to corroborate testimony he provided during the hearing (AR 106).

10      The ALJ appears to have selectively cited information helpful to his decision while

11  ignoring information that appears to have gone against his conclusions, even when such

12  information lived right beside the facts cited.  It follows that the ALJ failed to adequately, and

13  accurately, address Plaintiff's activities of daily living and how they related to relevant symptom

14  testimony.  *See Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (finding that the ALJ failed

15  to meet the "high bar for rejecting a claimant's symptom testimony," holding that "[the ALJ]

16  failed to acknowledge that, over and over in the same [function] report, Revels explained that she

17  could complete only some of the tasks in a single day and regularly needed to take breaks—which

18  was consistent with her symptom testimony.").

19      **B.  Whether the ALJ Failed to Support the Mental RFC with Substantial Evidence**

20      Separately, Plaintiff asserts that the mental RFC is not supported by substantial evidence.

21  He argues that the ALJ did not specifically reject any of Dr. Portnoff's concrete limitations, most

22  notably the "moderate" limitations found regarding Plaintiff's ability to complete a normal

23  workday or week without interruption from a psychiatric condition and the "moderate"

24  limitations in his ability to deal with the stress encountered in a competitive work environment.

25  Plaintiff states that this indicates the ALJ believes Dr. Portnoff's examination findings are

26  "consistent with the MRFC opinion, absent any discussion to the contrary indicating the ALJ was

27  rejecting any of Dr. Portnoff's MRFC limitations."  Plaintiff argues that the mental RFC

28  limitation of "routine work related [sic] decision making with occasional contact with coworkers

1  and the public" does not reflect these limitations, thus constituting harmful error. (Doc. 24 at 19,

2  citing AR 26).

3      Defendant argues the ALJ was not required to include any mental functional limitations in

4  the RFC and that the ALJ's RFC limitation was "reasonably attributed" to Dr. Portnoff's assessed

5  moderate limitations. (Doc. 26 at 28). Defendant cites case law for the proposition that the Court

6  must uphold the ALJ's reasoning if the "path may be reasonably discerned," even if explained

7  "with less than ideal clarity." *Id.* at 29.

8      "Where an ALJ accords substantial or great weight to a physician's opinion, he must

9  either incorporate their findings into the RFC or offer an explanation for why he chose not to

10  accept them." *Sahyoun v. Saul*, No. 2:18-CV-576-EFB, 2020 WL 1492661, at *3 (E.D. Cal. Mar.

11  27, 2020), citing *Martin v. Comm'r of Social Sec. Admin.*, 472 Fed. Appx. 580 (9th Cir. 2012)

12  ("The administrative law judge (ALJ) erred when formulating Martin's residual functional

13  capacity (RFC) because the RFC neither incorporated Dr. Steiner's opinion of Martin's work

14  limitations nor gave specific and legitimate reasons for rejecting it."), and *Neufeld v. Berryhill*,

15  No. 2:16-cv-03644 (VEB), 2018 WL 4739699, at *6, (C.D. Cal. Sept. 30, 2018) ("Having

16  afforded 'great weight' to the opinions of Dr. Bartell and Dr. Loomis, the ALJ was bound to

17  either incorporate their findings as to Plaintiff's limitations or explain why she decided not to

18  accept them."); *see Flores v. Saul*, No. 1:18-cv-01523-SKO, 2020 WL 509098, at *5 (E.D. Cal.

19  Jan. 31, 2020) (finding ALJ erred in giving "great weight" to consultative psychologist's opinion

20  but failing to outline "specific and legitimate reasons" for "implicitly rejecting significant

21  portions" of the opinion).

22      Here, the ALJ gave Dr. Portnoff's opinion "significant weight." (AR 26). Dr. Portnoff

23  found the following limitations: "mild to moderate limitations in [Plaintiff's] ability to accept

24  instructions from supervisors," "mild to moderate limitations in his ability to interact with

25  coworkers and the public due to MDD/PTSD/OCD," "moderate limitations in his ability to

26  complete a normal workday or workweek without interruptions from a psychiatric condition," and

27  moderate limitation in "ability to deal with stress encountered in a competitive work

28  environment." (AR 741). In the RFC, the ALJ included the following: "[Plaintiff] is limited to

1  only routine work related [sic] decision making with occasional contact with coworkers and the

2  public."  (AR 24).

3  Recent decisions in courts within the Ninth Circuit have held that "routine work" and

4  "occasional contact" restrictions are insufficient to account for moderate limitations in completing

5  a normal workday or workweek.  *See Flores*, *supra*, 2020 WL 509098, at *5 (finding limitation to

6  "simple repetitive tasks with occasional public contact" failed to accommodate moderate

7  difficulties in completing a normal workweek without interruption from psychiatric symptoms as

8  identified by consultative psychologist); *Christopher G. v. Saul*, No. 2:19-CV-06150-AFM, 2020

9  WL 2079972, at *6 (C.D. Cal. Apr. 30, 2020) (finding RFC to perform work involving simple,

10  routine tasks with limited public and coworker interaction failed to address moderate limitations

11  in performing activities within a schedule, maintaining regular attendance, being punctual within

12  customary tolerances, completing a normal workday or workweek, or performing at a consistent

13  pace without an unreasonable number and length of rest periods).

14  The ALJ failed to account for the limitations outlined in Dr. Portnoff's opinion, despite

15  giving it "significant weight," and did not provide any explanation for doing so.  As such, the

16  ALJ's mental RFC determination is not supported by substantial evidence.  *See Wiles v. Berryhill*,

17  No. 2:16-CV-09558-GJS, 2017 WL 5186333, at *3 (C.D. Cal. Nov. 8, 2017) (holding that

18  although moderate limitations in different areas of functioning, such as in the ability to maintain

19  regular attendance or to complete a normal workday or workweek, are not on their face disabling,

20  the ALJ's RFC assessment was not supported by substantial evidence without including the

21  limitations or, otherwise, offering specific reasons for rejecting the findings).

22  *        *        *        *        *

23  In sum, the ALJ has failed to meet the requirement to articulate clear and convincing

24  reasons to reject the Plaintiff's testimony regarding his psychological and physical symptoms and

25  failed to provide substantial evidence for not including Dr. Portnoff's limitations in the RFC.

26  The decision whether to remand for further proceedings or simply to award benefits is

27  within the discretion of the Court.  *See Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990).

28  Remand for further proceedings is warranted where additional administrative proceedings could

22

1   remedy defects in the decision.  *See Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984).

2   Remand for the payment of benefits is appropriate where no useful purpose would be served by

3   further administrative proceedings (*Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1980)); where

4   the record has been fully developed (*Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986));

5   or where remand would unnecessarily delay the receipt of benefits to which the disabled Plaintiff

6   is entitled (*Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985)).

7          Here, Plaintiff seeks an order from the Court remanding this case for further

8   administrative proceedings (Doc. 24 at 20), and the Commissioner argues that the Court should

9   affirm the ALJ's decision finding Plaintiff not disabled (Doc. 26 at 29).  The Court concludes that

10  remand for further proceedings is warranted because additional administrative proceedings may

11  remedy the deficiencies in the ALJ's decision noted herein.

12  **C.  CONCLUSION**

13         For the reasons set for above, the Court finds the ALJ erred in evaluating opinions in the

14  record and failed to apply the proper legal standards.  Accordingly, IT IS HEREBY ORDERED

15  that:

16      1.  Plaintiff's motion for summary judgment (Doc. 24) is **GRANTED**.

17      2.  Defendant's cross-motion for summary judgment (Doc. 26) is **DENIED.**

18      3.  This matter is **REMANDED** pursuant to sentence four of 42 U.S.C. §405(g) for further

19          proceedings consistent with this decision.

20      4.  The Clerk of the Court is **DIRECTED** to enter judgment in favor of Plaintiff David

21          Torrez and against Defendant Commissioner of Social Security.

22  IT IS SO ORDERED.

23  Dated:   __January 23, 2025__                    _____

24                                              UNITED STATES MAGISTRATE JUDGE

25

26

27

28

23